USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/19/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
PLATINUM PARTNERS VALUE ARBITRAGE  :
FUND L.P. (IN OFFICIAL LIQUIDATION) et al., :
: 1:22-cv-6376-GHW
Debtors in foreign proceedings. :
----------------------------------------------------------------- X
: MEMORANDUM OPINION &
PLATINUM PARTNERS VALUE ARBITRAGE  : ORDER
FUND L.P., :
:
Plaintiff, :
:
v. :
:
MICHAEL M. GOLDBERG, :
:
Defendant. :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

**I.     INTRODUCTION**

Michael M. Goldberg was a portfolio manager for Platinum Management (NY) LLC ("Platinum"), an investment management company.  When Mr. Goldberg left Platinum's employ, Mr. Goldberg and Platinum entered into a separation agreement, which provided for the transfer of equity interests in a third company to Mr. Goldberg.  Platinum Partners Value Arbitrage Fund L.P. ("PPVA") claimed an ownership interest in the same equity interests.  The conflicting claims developed into an adversary proceeding before the Bankruptcy Court for the Southern District of New York.  The Bankruptcy Court ruled against Mr. Goldberg on cross-motions for summary judgment, concluding that the transfer of equity pursuant to his separation agreement was subject to conditions precedent with which Mr. Goldberg had failed to comply.  Mr. Goldberg seeks the Court's leave to file an interlocutory appeal of the bankruptcy court's rulings pursuant to 28 U.S.C. § 158(a).  Because the motion involves a discrete issue of contractual interpretation, the application does not meet the stringent criteria for interlocutory appeal.  Accordingly, Mr. Goldberg's motion

for leave to appeal is DENIED.

## II.   BACKGROUND

PPVA was a hedge fund organized under the laws of the Cayman Islands. Dkt. No. 1-1, 4.[1] Beginning in 2007, Mr. Goldberg served as a portfolio manager for Platinum, which provided investment management and advisory services to PPVA and its investors. *Id.* In his capacity as portfolio manager, Mr. Goldberg worked with a number of companies, including Navidea Biophannaceutical Inc. ("Navidea"). *Id.*

In December of 2013, Mr. Goldberg separated from Platinum. *Id.* Mr. Goldberg and Platinum entered into a separation agreement (the "Term Sheet"), which outlined the terms of Mr. Goldberg's separation from Platinum. *Id.* The Term Sheet provided that "Platinum wishes, subject to the terms and conditions described herein, to cause certain private investment funds under its management . . . to transfer to Dr. Goldberg certain positions held by them as of December 31, 2013 . . . ." *Id.* Among the positions transferred were preferred shares in Navidea which could be converted into the company's common stock (the "PPVA Warrant"). *Id.* at 5.

The Term Sheet contained language that Platinum contends—and the Bankruptcy Court found—conditioned the transfer of the Navidea shares to Mr. Goldberg on the satisfaction of a number of conditions precedent. *Id.* The Term Sheet specified that Mr. Goldberg "shall issue to one or more of the Platinum Funds, as directed by Platinum . . . notes in the form of Exhibit A attached hereto," which required Mr. Goldberg to issue notes for the stated market value of the securities as of December 31, 2013 (the "Notes Condition"). *Id.* Additionally, the Term Sheet provided that the securities to be transferred "shall be deposited into one or more segregated brokerage accounts owned by Dr. Goldberg, each subject to a Securities Account Control Agreement in favor of Platinum and/or its affiliates . . . the terms of the Account Control

---

[1] Unless otherwise noted, page references are to page numbers on the ECF system.

Agreements must be reasonably acceptable to Platinum" and that "[i]t is the intent of the parties that Platinum . . . will have a first priority, perfected security interest in the Accounts, and the parties agree to take such steps as are necessary or desirable to effect such security interest" (the "Segregated Account Condition"). *Id.* Mr. Goldberg and Platinum later entered into an amended separation agreement (the "Amended Term Sheet," and together with the Term Sheet, the "Term Sheets"), which included the same Segregated Account Condition as the Term Sheet and a substantially similar Notes Condition. *Id.* Shortly after that, PPVA and Navidea entered into a Securities Exchange Agreement in which PPVA was identified as the owner of the same preferred shares that had been allocated to Mr. Goldberg in his separation agreement, laying the groundwork for this dispute. *Id.* at 4-5.

On August 23, 2016, Platinum, as the general partner of PPVA, filed for the liquidation of PPVA in the Cayman Islands. *Id.* at 5. The Bankruptcy Court for the Southern District of New York entered an order granting recognition and relief in aid in the liquidation. *Id.* at 5-6. Mr. Goldberg claimed an ownership interest in the PPVA Warrant, which resulted in the dispute before the bankruptcy court. *Id.* at 6. On cross-motions for summary judgment, the Bankruptcy Court examined the language of the agreements at issue and determined that the Term Sheets were not ambiguous as a matter of law. *Id.* at 13. The Bankruptcy Court also concluded as a matter of law that the language of the Term Sheets established conditions precedent to the transfer of the shares, and that those conditions had not been satisfied. *Id.* at 15. As a result, the Bankruptcy Court granted summary judgment in favor of PPVA on the issue of liability. *Id.* at 21.

Mr. Goldberg filed a motion for reconsideration. *Id.* at 26. Among the arguments that he presented in his motion for reconsideration was that the Bankruptcy Court had failed to properly construe the language of the Terms Sheet, and, in particular, that the Bankruptcy Court had failed to follow the Second Circuit's decision in *Thomas & Betts Corp. v. Trinity Meyer Util. Structures, LLC,* No. 20-

3

2904, 2021 WL 4302739, at *3 (2d Cir. Sept. 22, 2021). *Id.* at 29. The Bankruptcy Court issued an 11-page long decision denying the motion to reconsider. *Id.* at 34. In that opinion, the Bankruptcy Court addressed the arguments presented by Mr. Goldberg regarding the proper interpretation of his contract, including as they pertained to the application of the Second Circuit's decision in *Thomas & Betts*. *Id.* at 29-30. Because the Bankruptcy Court has resolved the issue of liability, the parties to the adversary proceeding in the Bankruptcy Court are currently awaiting a trial on the remaining issue of damages. Dkt. No. 10, 7.

On July 27, 2022, the Defendant filed this motion with the Court seeking leave to appeal the bankruptcy court's orders. Dkt. No. 3. Platinum filed its opposition on August 17, 2022. Dkt. No. 10. Plaintiff filed his reply on August 23, 2022. Dkt. No. 11.

### III. LEGAL STANDARD

District courts have jurisdiction over appeals from interlocutory orders of a bankruptcy court. *See* 28 U.S.C. § 158(a)(3). Because 28 U.S.C. § 158(a)(3) does not specify any criteria for granting leave to appeal, courts consistently apply the standards set forth in 28 U.S.C. § 1292(b) for interlocutory appeals to the United States Court of Appeals. *See, e.g., In re Lehntan Bros. Holdings Inc.*, 2019 WL 2023723, at *3 (S.D.N.Y. May 8, 2019). The three-part test codified in 28 U.S.C. § 1292(b) provides that leave to appeal should be granted only if (1) the appeal "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

To satisfy the first criterion of Section 1292(b), the movant must demonstrate that the question is both controlling and a question of law. *In re Lehman Bros. Holdings Inc.,* No. 18-CV-8986-VEC, 2019 WL 2023723, at *3 (S.D.N.Y. May 8, 2019). A case involves a "controlling question of law" if reversal of the bankruptcy court's order holding could "result in dismissal of the action,"

"significantly affect the conduct of the action," or if the issue on appeal "has precedential value for a large number of cases." *Id.* A "controlling question" must be "a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the record.'" *Id.* The second criterion under 28 U.S.C. § 1292(b) requires that there be a "substantial ground for a difference of opinion," which "must arise out of a genuine doubt as to the correct applicable legal standard relied on in the order." *Id.* (citing *In re Worldcom, Inc.*, No. M-47, 2003 WL 21498904, at \*10 (S.D.N.Y. June 30, 2003)). "Genuine doubt exists where '(1) there is conflicting authority on the issue or (2) the issue is particularly difficult and of first impression.'" *Estate of Madoff*, 464 B.R. at 582 (quoting *Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.)*, No. 01-16034, 2006 WL 2548592, at \*4 (S.D.N.Y. Sept. 5, 2006)). Third, the movant must show that the appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Courts in this district have described the three criteria of 1292(b) as creating "a significant hurdle" for those seeking leave to appeal an interlocutory order. *In re Barnett*, No. 16-cv-436, 2016 WL 3944482, at \*1 (S.D.N.Y. July 18, 2016). A movant has the burden of showing that all three criteria are met. *See In re Poseidon Pool & Spa Recreational, Inc.*, 443 B.R. 271, 275 (E.D.N.Y. 2010).

Moreover, even if the three criteria are met, the court retains the discretion to determine whether leave to appeal is warranted. *See Gibson v. Kassover,* 343 F.3d 91, 94 (2d Cir. 2003). Leave to appeal an interlocutory order should be granted "only in exceptional circumstances that overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of a final judgment." *Estate of Madoff*, 464 B.R. at 582-83 (citing *In re Bernard L. Madoff Investment Sec. LLC (In re Madoff)*, No. 11- MC-0012, 2011 WL 3897970, at \*3 (S.D.N.Y. Aug. 31, 2011) (internal punctuation marks omitted)). Accordingly, district courts must "exercise great care in" choosing to grant a party leave to file an interlocutory appeal. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014)

(citing *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distribution Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)).

### IV. DISCUSSION

Mr. Goldberg has not met his burden to demonstrate that the three criteria codified in 28 U.S.C. § 1292(b) have been satisfied.  Mr. Goldberg has failed to satisfy the first criterion because the proposed appeal involves a question of contractual interpretation.  To satisfy the first criterion of § 1292(b), the movant must demonstrate that the question is both controlling and a question of law.  *Id.*  The proposed appeal seeks to challenge the Bankruptcy Court's interpretation of a contract.  "While the meaning of a contract generally is considered to be a question of law for the court, a question of contract interpretation typically is not a 'controlling question of law' that serves as a basis for interlocutory appeal."  *Certain Underwriters at Lloyd's, London v. Drennen*, 20-cv-1645 (LJL), 2020 WL 1816198, at *3 (S.D.N.Y. April 10, 2020) (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 426 F. Supp. 2d 125, 128 (S.D.N.Y.2005); *Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 94 (S.D.N.Y. 2002) (holding that "[d]ifferences over contract construction are not the sort of 'controlling question of law' that normally gives rise to interlocutory certification.").

This case also does not involve a "controlling" question of law because it does not have precedential value for a large number of cases:  again, it involves a *sui generis* issue involving the interpretation of a particular contract.  Moreover, reversal of the bankruptcy court's order would not result in dismissal of the action.  Reversal would certainly have an effect on the proceedings: the parties would be confronted by a trial involving liability as well as damages, rather than merely a trial regarding damage.  However, Mr. Goldberg has not established that this would be a significant effect because of a substantial delta between the evidence to be presented with respect to each issue or otherwise.

Mr. Goldberg has also failed to meet his burden to demonstrate that there is a substantial

6

ground for a difference of opinion. *See* 28 U.S.C. § 1292(b). To satisfy the second criteria of Section 1292(b), the movant must show that there is a "substantial ground for a difference of opinion," which "must arise out of a genuine doubt as to the correct applicable legal standard relied on in the order." *In re MF Global Holdings, Ltd.*, 2012 WL 4763087, at *5 (S.D.N.Y. Oct. 5, 2012) (quoting *MCI WorldCom Commc'ns v. Commc'ns Network Int'l*, Ltd., 358 B.R. 76, 79 (S.D.N.Y. 2009)). The record before the Court at this stage does not leave it with such genuine doubt. Mr. Goldberg argues that the Bankruptcy Court failed to properly apply the Second Circuit's decision in *Thomas & Betts Corp.*, 2021 WL 4302739 (2d Cir. Sept. 22, 2021). But it is clear from the opinions of the Bankruptcy Court that it was aware of that precedent and that it applied it in its rulings: the Court is left with no doubt that the Bankruptcy Court considered the correct legal standard. Although reasonable arguments could be made by both parties regarding the Bankruptcy Court's application of that precedent, that is insufficient to show "substantial ground for difference of opinion." *Estate of Madoff*, 464 B.R. at 582 (quoting *Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.)*, No. 01-16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006)).

Mr. Goldberg has also failed to meet his burden to demonstrate that the appeal would "materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). "[T]he court must be of the opinion that immediate appeal of an order will literally accelerate the action as a whole." *Genentech, Inc. v. Novo Nordisk A/S*, 807 F. Supp. 97, 100 (S.D.N.Y. Dec. 11, 1995). All that is left in the bankruptcy action is for the court to hold a trial on damages. If the Court vacated or reversed the bankruptcy court's orders, it would not materially advance the termination of the action, but would instead likely prolong the action as it would be subject to multiple bites at the apple for appellate review: first the requested review by this Court (and potentially a higher court or courts) with respect to the issue of summary judgment on liability; further litigation before the Bankruptcy Court as to liability, with potential further appellate review; then a trial on liability

and/or damages, with still further potential appellate review. In the Court's judgment, the litigation is likely to be advanced more expeditiously by proceeding in the ordinary course to judgment, permitting a single round of appellate review on a complete record. Accordingly, Mr. Goldberg has failed to meet any of the criteria required by 28 U.S.C. § 1292(b) to merit interlocutory review of the Bankruptcy Court' decision.

Even if this Court had found that Mr. Goldberg met the criteria in 28 U.S.C. § 1292(b), the Court would exercise its discretion to conclude that this is not one of those exceptional cases that justifies departure from the judicial policy against piecemeal appeals because this case concerns a discrete issue of contract interpretation. It is a legal issue of significance to the parties in this case, but a decision by the Court regarding the construction of these contracts, applying well-established principles of contract interpretation, does not have precedential value beyond this case.

## V.     CONCLUSION

Because Mr. Goldberg has not met his burden to satisfy each of the criteria set forth in 28 U.S.C. § 1292(b), and because no exceptional circumstances justify the exercise of the Court's discretion to grant an interlocutory appeal, Mr. Goldberg's motion for leave to appeal is DENIED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 3 and to close this case.

SO ORDERED.

Dated: September 19, 2022
New York, New York

GREGORY H. WOODS
United States District Judge